**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Amr Mohsen, | ) No. CIV-11-566-TUC-JGZ (LAB) |
| Petitioner, | ) |
| | ) **REPORT AND** |
| | ) **RECOMMENDATION** |
| vs. | ) |
| | ) |
| Conrad M. Graber, | ) |
| | ) |
| Respondent. | ) |
| | ) |
| _____ | ) |

On September 7, 2011, the petitioner, an inmate confined in the Federal Correctional Institution in Safford, AZ, filed a Petition for Writ of Habeas Corpus pursuant to Title 28, United States Code, Section 2241.  (Doc. 1)  The petitioner claims the Bureau of Prisons (BOP) failed to properly evaluate his request for transfer to a Residential Re-entry Center (RRC) in violation of 18 U.S.C. § 3621(b).  *Id.*  He further claims the BOP improperly determined his offense severity level.  *Id.*

Pursuant to the Rules of Practice of this Court, this matter was referred to Magistrate Judge Bowman for Report and Recommendation.

The petition should be denied.  The BOP properly evaluated Mohsen's request for transfer.  The BOP's determination of Mohsen's offense severity level was not arbitrary or capricious.

Background

Mohsen was convicted in the U.S. District Court for the Northern District of California of conspiracy to obstruct justice and commit perjury, perjury, subordination of perjury, mail fraud, obstruction of justice, contempt of court, attempted witness tampering, and solicitation to commit arson. (Doc. 9-1, p. 7)  The trial court sentenced Mohsen to a 204-month term of imprisonment.  (Doc. 9, p. 2)  The BOP projects Mohsen will complete his sentence on January 16, 2019, assuming he earns all available good time.  *Id.*

In March of 2011, Mohsen asked to be placed in a Residential Re-entry Center (RRC) for the balance of his term of imprisonment.  (Doc. 1, pp. 4, 13) The BOP denied his request explaining that "the unit team reviewed the criteria" and "feels that your current designation to FCI Stafford is commensurate with your security and program needs."  (Doc. 9-1, p. 30) The BOP stated further that "Unit Team will discuss RCC placement when you are within 17-19 months from release."  *Id*.

Mohsen appealed to the warden, Conrad M. Graber, who explained that his request for transfer was "extensively reviewed utilizing the five factors outlined in the Second Chance Act."  (Doc. 9-1, p. 11)  Mohsen then appealed to the regional director, Robert E. McFadden, who explained that an "individual determination regarding your RCC request" was made in accordance with the "criteria set forth in the Second Chance Act of 2007."  (Doc. 9-1, p. 13) It appears that Mohsen also appealed to the national administrator of inmate appeals, but filed this petition before receiving a decision.  (Doc. 9, p. 4)

Previously, Mohsen had asked that his offense severity level be reduced from "High" to "Moderate" because he believed this would increase his chances of a transfer.  (Doc. 1, p. 5) When his request was denied, he formally appealed to the warden, Conrad M. Graber.  (Doc. 9-1, p. 17)   The warden denied his appeal explaining that the "arson-other" category in the appendix of Program Statement 5100.08 best approximated his offense of conviction and that category is designated a High Severity offense.  (Doc. 9-1, p. 17)  Mohsen then appealed to the regional director, Robert McFadden.  (Doc. 9-1, p. 21) McFadden denied the appeal explaining that where the specific crime is not listed in the Program Statement Appendix, the severity level

1    of the "most comparable listed offense" is used. *Id.*  Here, "solicitation to commit arson" is not

2    listed, but "arson-other" is listed, and that is the offense most comparable to the crime of

3    conviction. *Id.*  Mohsen then appealed to the national administrator of inmate appeals, Harrell

4    Watts.  (Doc. 9-1, p. 24)  Watts denied the appeal explaining that because Mohsen "solicited

5    another person to set fire to a witness's car during [the] trial," the offense "arson-other" best

6    described his crime of conviction. *Id.*

7         On September 7, 2011, Mohsen filed a petition in this court for writ of habeas corpus

8    pursuant to 28 U.S.C. §2241.  (Doc. 1)  He claims he asked for a transfer to an RRC, but his

9    request was denied without the proper five-factor analysis mandated by 18 U.S.C. § 3621(b).

10   *Id.*  He further claims the BOP improperly determined his offense severity level. *Id.*

11        On September 29, 2011, the court screened the petition, ordered service, and instructed

12   the respondent to file an answer.

13        On October 26, 2011, the respondent filed an answer arguing Mohsen's two claims

14   should be denied on the merits.  The respondent further argues Mohsen's RRC claim should be

15   denied for failure to exhaust administrative remedies.

16        Mohsen filed a reply on December 5, 2011.

17        The court finds Mohsen's two claims should be denied on the merits.  The court does not

18   reach the respondent's exhaustion argument.

19

20    <u>Discussion: RCC Transfer Claim</u>

21        Mohsen claims his request for transfer to an RRC was denied without the proper five-

22   factor analysis mandated by 18 U.S.C. § 3621(b).

23        Persons convicted in the federal criminal justice system and sentenced to a term of

24   imprisonment are committed to the custody of the Bureau of Prisons (BOP).  18 U.S.C. §

25   3621(a).  Once committed, the BOP must "designate the place of the prisoner's imprisonment."

26   18 U.S.C. § 3621(b).  The BOP may designate any facility the Bureau considers "appropriate

27   and suitable" after considering five factors:

28        (1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence--

> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

> (B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C.A. § 3621(b).

Inmates may be placed in a Residential Re-entry Center (RRC) at any time during their term of incarceration. *Rodriguez v. Smith*, 541 F.3d 1180, 1183 (9th Cir. 2008). If an inmate makes a request for transfer to an RRC, the BOP must consider the request in light of the five statutory factors. *Id.*

A second avenue for transfer is provided by the Second Chance Act. *Miller v. Whitehead*, 527 F.3d 752, 756 (8th Cir. 2008). This act provides that the BOP

> shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility [now known as a Residential Reentry Center].

18 U.S.C.A. § 3624(c)(1); *Arnett v. Washington-Adduci*, 2011 LW 6951848, p. 4, n. 6 (C.D.Cal. 2011). Under the Second Chance Act, prisoners are automatically reviewed for RRC placement "17-19 months before their projected release dates." *Miller*, 527 F.3d at 756. This review must consider the five factors listed in 18 U.S.C. § 3621(b). 18 U.S.C. §3624(c)(6).

In his petition, Mohsen argues the BOP denied his request for transfer without considering the five statutory factors. He is incorrect. On June 21, 2011, the warden, Conrad M. Graber, explicitly stated that the five factors were considered and a transfer was not warranted. (Doc. 9-1, p. 11) There is no evidence that the denial was made without resorting to the five statutory factors. *See also Miller v. Whitehead*, 527 F.3d 752, 758 (8th Cir. 2008) ("Although the warden's responses were brief, the statute does not require the BOP to provide

1  prisoners with a detailed statutory analysis whenever a prisoner requests an immediate transfer
2  to an RRC.").

3       Mohsen argues in his reply that the BOP denied him an individualized assessment
4  because he is not 17-19 months from release.  The court does not agree.  In response to
5  Mohsen's request for transfer, the BOP explained that "the unit team reviewed the criteria" and
6  "feels that your current designation to FCI Stafford is commensurate with your security and
7  program needs."  (Doc. 9-1, p. 30)  The BOP stated further that "Unit Team will discuss RCC
8  placement when you are within 17-19 months from release."  *Id.*  This latter statement is a
9  reference to the Second Chance Act, which is an alternate avenue by which an inmate may
10  qualify for RCC placement.  Under the Second Chance Act, inmates are automatically reviewed
11  for RRC placement "17-19 months before their projected release dates."  *Miller*, 527 F.3d at
12  756.  This statement explains that Mohsen will be automatically reevaluated in the future for
13  RRC placement.  Contrary to Mohsen's suspicions, it is not an admission that Mohsen's request
14  for RRC placement was automatically denied because his release date was more than 19 months
15  away.  Indeed, in his second ground for relief, Mohsen states he was told that a previous transfer
16  request was denied because of his high offense classification.  Obviously, the BOP considered
17  that previous request for transfer on the merits.

18

19       Discussion: Offense Classification Claim

20       Mohsen further claims his crime of solicitation to commit arson should not have been
21  designated a High Severity offense.  He argues the BOP's decision in this matter was arbitrary
22  and capricious.[1]  (Doc. 11, p. 4)

23  _____

24       [1]  The court assumes, without deciding, that Mohsen has a right to be free from arbitrary and
     capricious classifications.  *See Marchesani v. McCune*, 531 F.2d 459, 462 (10th Cir. 1976) ("We have
25   held that the control and management of federal penal institutions lies within the sound discretion of
     the responsible administrative agency, and judicial review will be granted only upon a showing that
26   prison officials have exercised their discretionary powers in such a manner as to constitute clear abuse
     or caprice."), *cert. denied*, 429 U.S. 846 (1976); *but see, Moody v. Daggett*, 429 U.S. 78, 88, 97 S.Ct.
27   274, 279 (1976) ("Congress has given federal prison officials full discretion to control these conditions
28   of confinement, . . . and petitioner has no legitimate statutory or constitutional entitlement sufficient

As discussed above, it is the job of the BOP to "designate the place of the prisoner's imprisonment." 18 U.S.C. § 3621(b).  To facilitate this task, the BOP has developed an inmate classification procedure designed "to place each inmate in the most appropriate security level institution that also meets their program needs and is consistent with the Bureau's mission to protect society."  Program Statement (PS) 5100.08.

"The classification procedure involves consideration of various factors to determine the proper security and custody classification."  *Leggins v. Duncan*, 2010 WL 4916437, 4 (D.Ariz. 2010).   "These factors include severity of the current offense, length of the current sentence, criminal history, history of violence, history of escape and escape attempts, number and type of detainers, involvement with drugs and alcohol, mental or psychological stability, institutional adjustment and responsibility."  *Id.*  "An inmate's custody classification is determined when he enters BOP custody . . . and is re-calculated annually during the inmate's institutional Program Review."  *Id.*

The "severity of the current offense" is determined by reference to an Offense Severity Scale.  PS 5100.08, Appendix A, page 1.  For example, "robbery – any," "homicide – any," and "arson –  substantial risk of death or bodily injury" are listed as Greatest Severity offenses.  *Id.* "Cruelty to Children – any," "stalking – any," and "arson – other" are listed as High Severity offenses.  *Id.*, p. 2.  "Auto theft – any," "breaking and entering – any," and "obstruction of justice – any" are listed as Moderate Severity offenses.   *Id.*, p. 3.  The Program Statement instructs that "attempt, aiding and abetting, conspiracy, misprision of a felony and accessory after the fact" should be scored "in the same category as the underlying offense."  *Id.*, p. 8. "Offenses not listed will be assigned a severity category according to the most comparable listed offense."  *Id.*

Mohsen argues his crime of conviction, solicitation to commit arson, should not have been classified a High Severity offense, because ordinary arson is classified as a High Severity

---

to invoke due process.").

- 6 -

offense and *solicitation* to commit a felony is considered a less serious offense than the underlying crime.  He argues classifying his offense of conviction as a High Severity offense was arbitrary and capricious.  It was not.

The Program Statement divides offenses into categories such as Greatest Severity, High Severity, and Moderate Severity.  PS 5100.08, Appendix A.  If an offense is not listed, it is assigned the severity level of the offense that is most comparable.  *Id*., p. 8.  Here, the crime of solicitation to commit arson is not listed; therefore, it must be assigned the severity level of the most comparable listed offense.

The Program Statement specifically states that *attempted* arson, *aiding and abetting* arson, and *misprision* of a felony (arson) are classified the same as the underlying offense, which is a High Severity offense  *Id*.  *Solicitation* to commit arson is not exactly the same as those offenses, but the BOP could reasonably conclude solicitation to commit arson is more closely related to one of those offenses than it is to any of the offenses in the Moderate Severity section.  And if those offenses are classified the same as the underlying offense, then it would be reasonable for the BOP to classify solicitation to commit arson the same as the underlying offense. The BOP's decision to classify solicitation to commit arson as a High Severity crime was not arbitrary and capricious.  *See, e.g., Stubbs v. Middlebrook*, 2009 WL 2436608, 1 (N.D.Fla. 2009) (BOP did not violate petitioner's due process rights when it classified "murder for hire" as a Greatest Severity offense.).

Mohsen argues that solicitation to commit arson is a less severe crime than the underlying felony.  While that may be true, it does not follow that solicitation to commit arson should be classified as a Moderate Severity offense.  If the crime of conviction does not appear in the Appendix, the BOP determines which listed offense is most comparable. PS 5100.008, Appendix A, p. 8.  The most comparable offense could be slightly more severe or slightly less severe than the crime of conviction.  Here, the BOP decided that the crime of solicitation to commit arson was most comparable to the listed offense "arson – other."  The fact that the listed offense here might be slightly more severe than the crime of conviction does preclude the BOP

1   from determining that that listed offense is the most comparable.  Nothing in the Program
2   Statement is to the contrary.

3
4        RECOMMENDATION
5        The Magistrate Judge recommends that the District Court, after its independent review
6   of the record, enter an order denying the petition.  (Doc.  1)
7        Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within
8   14 days of being served with a copy of this Report and Recommendation.  If objections are not
9   timely filed, they may be deemed waived.

10
11       DATED this 10th day of December, 2012.

12
13                    _Leslie A. Bowman_
14                    Leslie A. Bowman
15                    United States Magistrate Judge

16
17
18
19
20
21
22
23
24
25
26
27
28